All right. We'll hear from the appellant. And Mr. McPherson. Good morning, Your Honor. May it please the Court, and I apologize in advance for the quality of counsel's voice today. May it please the Court, my name is Jeff McPherson. I represent the appellant, Evanston Insurance Company. For all the reasons that are set forth in the appellant's brief and in our reply brief, we would ask the Court to reverse the dismissal with prejudice and remand this action to the District Court for a resolution on the merits. This is a declaratory judgment case. First, there is no dispute that the allegations of the complaint state a claim for a declaratory judgment. The allegations of the complaint are, in addition to being entitled to being considered truthful for the purposes of this appeal, as shown through the additional record before the Court, that Evanston issued four policies of insurance with policy limits of $5 million, $5 million, $25 million, and $25 million. Neuter has asked the Court to take judicial notice of a state court order holding that Evanston has paid over $40 million in indemnity under those policies. And I will tell the Court that that number is as of January of this year, now the number is something over $43 million. Count one of the complaint asks the Court, asks the District Court to render a declaratory judgment that at least some of these policies have been fully satisfied by the payments. The $40 million and more that has undisputably been paid fully satisfies at least two, probably three of these policies. And so looking no farther than the allegations of the complaint and the relief that's requested, the undisputed fact of the payment of all this money, the Court should have granted a declaratory judgment that at least some of these policies have been fully satisfied. Counsel, I'm just curious. It's my understanding that your declaratory judgment action is seeking a declaration that you've fulfilled your obligations under a Missouri state court order. And we're operating here under Missouri law. I'm curious why this case was filed in federal court rather than in Missouri state court. The short answer to that is, Your Honor, that the lawyers who filed it were from Chicago. There is no doubt that there is diversity of citizenship. This is within the jurisdiction of the Court. I assume it was for the convenience of counsel. But, Your Honor, there's no magic about filing a Missouri suit. This Court entertains plenty of diversity actions based on Missouri law. There's nothing in the record that suggests that there was any malign purpose with respect to that. But didn't the Missouri state court retain jurisdiction over all of this so that your client could have simply returned to that court, which was familiar with the case, had made decisions, entered orders about the relationship? And wouldn't that be the logical place to go? Well, Your Honor, there's no doubt that the state court would have had jurisdiction to entertain the claims that are set forth in this complaint. And I have heard from the other side that the circuit court retained jurisdiction. But with respect to this particular issue, this issue had never been considered or decided in the circuit court before. Of course, the circuit court has jurisdiction to enforce and consider obligations under its judgments. So every court always has jurisdiction to consider whether its judgments have been satisfied, et cetera. But there's nothing about this complaint that, apart from how it relates to the same policies, there's nothing about this complaint and the issues sought to be raised here that was decided in that first action. Or that was before the court to be decided in that first action. That first action was the one that's part of the reported decision by the Missouri Court of Appeals. It's called Nuder against Allianz. That's the 2017 case. In that case of page 259, footnote 8, the court says what that case was about, what that first litigation was. That was coverage litigation. Nuder sought declaratory judgment to establish the party's rights, duties, and obligations under umbrella and excess general liability insurance policies that Nuder purchased from these eight excess insurers. The court said what that case was about. Why doesn't this run into a claim splitting problem? Because the policy limits were known at the time. The duty to defend and the duty to indemnify were established by contract were issued before the court at that point. And you could have deposited these sums of money into the court at the sort of ab initio and said, you know, this is where we're at. And I get where the idea is that perhaps the policies will not be exhausted in the course of the litigation, right? Nobody's in the business of throwing money down the rabbit hole, so to speak. But there is a potential here to view this as a claim splitting problem. And so I just want your best argument why that's not the case. Your Honor, my best argument for that is one that's made by the Supreme Court of Missouri in the LeBlanc case that's cited in our briefs. What that first issue in the first case and the extent to which that first case has power to preclude further litigation is based on what are the issues in that case. And the LeBlanc case says that the thing being sued for in that case is the subject matter of the suit. The subject matter of that suit was coverage litigation between this insured and eight excess insurers. The subject matter was who under these policies, what are these parties' rights, duties, and obligations. That was being declared as of that litigation was commenced in 2010. Judgment was entered in 2014 and 2015. The judgment was affirmed in 2017. And so since that time, Evanston has been paying. Since that time, claims have been made to implicate the coverage and require payments, which the state court has found. Evanston has fully complied with. Evanston has satisfied all of its obligations up to the present time. It's only after, for example, as to count one of our complaints, after at least a couple of these policies have been fully exhausted, that we came to the court for a declaratory judgment that, based on facts that have occurred long after the entry of the declaratory judgment on coverage, are we entitled to be free of further obligations under those policies and maybe these other couple of policies. And so, Your Honor, this is not based on facts that existed at the time. And I understand Your Honor's question, and I think it was a suggestion made in the Applebee's brief, that we absolutely could have paid $60 million in advance of any coverage determination and in advance of any claims even near or approaching $60 million. Respectfully, Your Honor, there has been no citation to any authority for the proposition that if you obtain a declaratory judgment as to the party's rights under a contract, you can never obtain a declaratory judgment later as to whether those rights as set forth have been satisfied. And where we are here, Your Honor, is this is a dismissal with prejudice from the district court. So the district court is saying, not only are we kicking you out on this complaint, not only are you not entitled to a declaration as to what your rights are now, but it's dismissed with prejudice so you can never come back again. You have no right ever to come back. Our brief sets forth where we are in the race judicata analysis. We're going to be a bad race judicata problem if this judgment gets affirmed that dismisses with prejudice any claim we could ever have to seek a declaratory judgment. The law does not support that. The facts do not support that. None of the authority that's cited by the other side supports that. Respectfully, this is not a case that is governed by that action, which was on a different topic. Did it address these policies? Absolutely it did. Did it ask what are the rights of the policies as between not only Nooter and Evanston, but these other excess insurers and the first layer of coverage? There are a lot of issues there, legal, contractual, that go to the rights of the parties, not when. And that judgment said that these are your rights up to the time that the policies are exhausted. So there's no claim that there's any perpetual right or endless right to indemnity or defense costs. That's not set forth by the other side. It's not set forth in any of these judgments. And so if the rule, if the obligations as set forth are not endless or eternal, then there must be a way, there must be a time when we can obtain a declaratory judgment that those obligations have been satisfied. And respectfully, this is that case. Respectfully, we would ask the court to set aside this dismissal with prejudice and send us back to the district court so we can have a resolution on the merits of these claims. There are many other issues that are raised in the briefs. There's a claim about the Rooker-Feldman doctrine. I do not believe that applies. That only applies when a state court loser tries to overturn a decision in the federal system. That's not where we are on this. As to the state court order that Nooter has mentioned, Nooter was a loser. Nooter sought contempt, was denied with findings by the court that Evanson had fully complied with all of its obligations to date. So the Rooker-Feldman does not apply in the manner that Nooter would suggest. For all those reasons, we would ask the judgment to be reversed. I'll reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. For the appellee. Mr. Gibbons, you may proceed when you're ready. Good morning, Your Honors, and may I please court John Gibbons on behalf of Nooter Appellees. For 14 years, up until this very day, the Missouri State Courts have presided over the coverage disputes between Nooter and Evanson and fully resolved those disputes. Earlier this year, the trial judge who had presided over that case since 2010, ruled and held that the issues that Evanson has tried to bring to the federal courts, he ruled on years ago. And there are two issues that Evanson really tried to bring. And the counsel didn't really fully accurately describe count one of Evanson's complaint or count two. Count one of Evanson's complaint, this is in the appendix starting at page eight, but goes to an issue that the judge in Missouri ruled upon, which was Nooter selected a certain policy, 8182, to pay. Evanson, in count one, seeks to unselect and exhaust policies that Nooter had not selected. Evanson argued that it had the right to select policies for exhaustion. And Judge Omer, who presided over the case, said that he had already ruled upon this. And Nooter's selection stands, and Evanson's interpretation is improper and misguided. And that's a paragraph nine on page five of the February 29th order. The second count, which is really what the case was about that Evanson sought to bring in the federal courts, was an argument that Evanson calls tender, which is really a dumping of limits argument. And that is where you have a duty to defend that is in addition to the duty to identify. Evanson sought to unilaterally eliminate its duty to defend by dumping limits and, quote, unquote, tendering without actually paying claims on settlements or judgments. And the judge who presided over the case and had issued the judgments that then went up to the Missouri Court of Appeals and that Evanson sought to take to the Missouri Supreme Court and that came back down to the sacred judge, again, ruled on this issue and said that Evanson's intent may be to dump limits, which is prohibited under Missouri law and public policy, citing Miller's mutual. And that's a paragraph seven on page four of the February 29th order. The judge went on to say that the court does not accept the position of tender to fulfill the duty to defend and this certainly would violate the history and law of this case. The judge went on, it's improper for Evanson to reinterpret this court's rulings under the law of this case. The case in the circuit court for St. Louis continues to this day. It's still open. In fact, the judge in his order said that he continues to have jurisdiction to oversee and to the extent that he expects the rulings to be complied with and fulfilled, to the extent that they're not, that attorney's fees may be awarded. So with the judge's order, there are really four bases for affirmance and dismissal that are related and connected that come up. But the first certainly is the concept of whether there would be subject matter jurisdiction now going back for the district court to take up and effectively set the federal courts in Missouri against the state courts of Missouri and overruling what the judge has said he ruled upon. Evanson may dispute and may not like what the state court judge ruled upon, but the remedy when there is to go back to the state court and deal with the state court through the appeals process not to come to the federal courts and to try and have the federal courts come over the top unless you're filing a cert to the Supreme Court. It's not proper to try and start an interesting battle between the federal courts and the state versus I need to get some clarification about a couple of things factually here, and I hope that you can help me out. In the state court action where there was this tendering, did that involve a tender of policy limits? It was my understanding from looking back at this that it was not a tender of the full policy limits at the time of the state court judgments. And so I understood the argument of the insurance company to be, okay, there was not a full tender of policy limits back then, but now there is. Now we've tendered policy limits, and so it's a different situation. It's actually kind of a different lawsuit, so to speak. It's not. There was not a tender, meaning they hadn't tendered, and they actually have never actually tendered. I mean, they talked about tendering, but they've never done it. But, Your Honor, that's what actually Judge Omer addressed, which is it's the same lawsuit, it's the same issue. It's the duty to defend. And Judge Omer found a duty to defend that continues until there is exhaustion through payments of settlements and judgments. A tender under the theory that Evanston has argued means that there would not be a duty to defend. It is just an attack on the duty to defend because unilaterally they could, and they don't need to tender, they could have in 2014 said, well, on a duty to defend, that's actually our control. We don't have a duty to defend. We have an option to defend, or we optionally could choose to do, we could just hand over the money before there's any claim, and you wouldn't have a duty to defend. That was their option. They could have argued that. They made other arguments challenging the duty to defend, and different theories on the duty to defend, arguing against it, is not something that's preserved. That's actually the Kesterson case, which was relied upon from the Ombank, Missouri Court of Appeals, which is much more on point here, which is actually an insurance case. And in that case, the policyholder had two different theories as to how it could try and get coverage in an auto accident case. The other question is, when the district court in this case makes these statements, for example, the court said nothing prevented plaintiff from making the tender before or during litigation in the coverage action, or raising a similar argument when Evanston's duty to indemnify and defend was litigated. And it makes that statement, but I'm thinking, okay, so what? I don't see any authority set forth here by the district court that makes that statement, even if true, legally significant. Well, I think Kesterson does, Your Honor, because Kesterson, there were two different theories to obtain coverage. Here, what we're talking about is Evanston has two different theories to attack the duty to defend, and Kesterson, because of an oddity of explicitly exempting out on a without prejudice basis. But two different theories of obtaining coverage are under the same policy, are connected, and would be claim splitting if you split them. In the same way, when you have two different arguments trying to attack the duty to defend, and you don't, if you try and split them, that's claim splitting, Your Honor, and that would be Kesterson. Your Honor, I would also note that, let's be very clear, the Missouri State Court didn't find that Evanston did everything that it was supposed to do. In fact, in paragraph 12 on page 5, this court, while acknowledging some technical breaches of its orders, Evanston breached its orders and lost on the two substantive issues, on both the selection issue and on the tender dumping of limits issue, which the Missouri Supreme Court, I mean, I'm sorry, the Missouri Circuit Court has ruled upon. And that's what now Evanston is seeking to have the Eastern District of Missouri opine on. But the State Court's already ruled, and thus the Eastern District of Missouri would be taking up a question that the Missouri State Courts have already ruled upon. That brings Rooker-Feldman right into play, and this Court's Parker Law Firm decision very much so, because in that case, there it was a ruling that went to arbitration, didn't deal with the substance. Here, the substance of what Evanston is trying to do by involving, invoking the federal courts, change the selection rules and to change the tender and say that their duty to defend, in fact, isn't a duty to defend, but is something that they can unilaterally control, which the Missouri Courts have rejected. But that makes them the loser on those two issues, because that's what they're seeking to bring to the Eastern District of Missouri. So if it came back down immediately, they would be asking the Eastern District of Missouri to be in conflict with the Missouri State Courts, and that's what Rooker-Feldman prevents. Counsel, I wanted to turn to another issue, and that is the dismissal with prejudice. Yes. Mr. McPherson expressed the concern that dismissal with prejudice means that Evanston could, under no circumstances, ever get a declaratory judgment that it had fulfilled its obligations. Is that how you read it, or is it just that this particular claim is precluded? This particular claim is precluded, Your Honor. I disagree vehemently with counsel. I think that, in fact, they can go back. And the place they go back, by the way, Your Honor, because I said four, would be the Missouri State Courts. What's precluded is they can't try and re-argue and challenge a duty to defend on this tender dumping of limits issue. That's been addressed and dealt with, and we know that. And they can't try and upend the selection, which had been ruled upon by the Missouri State Courts. Evanston has the full ability to file a declaratory judgment action saying that it has actually complied with the existing orders and isn't seeking to replace them. What the district court did, the district court said, you can't try and replace the orders, which is what both the district court and the Missouri State Courts have now recognized, saying, no, in fact, your theories are, in one, violate the history and law of the case, and in the other, improper and misguided were the words. And that's why Evanston was a loser on those substantive issues. But, Your Honor, it also goes to the fact that, okay, we have Rooker-Feldman won. We have claims splitting and claims preclusion as a second basis, which is actually the basis that Judge Ross ruled upon. Three, we have collateral estoppel because in 2010, Evanston sought to get the federal courts involved in the case. And, in fact, because of language in Evanston's policy that says that Evanston has to agree to the jurisdiction that Nutter selected, which was the state courts, the case was sent back on consent order. That consent order is still in place. And so the state court is the selected jurisdiction that Nutter has been litigating for 14 years. That declaratory judgment action, Your Honor, could be brought. And they could go back to, and they're required to go back to the state court that's still presiding over the case and still has it open. That's why there's an order issued, and then the order says that it's still presiding over it. But then fourth, Your Honor, even if we get down to the fourth level, then we run into the Wilton and Brilhart abstention doctrine. It says where you've got competing cases under any type of articulation of first filed rule. The case filed in 2010 that went up to request the Missouri Supreme Court by 2017 and came down and has been ably handled in Missouri State Court, that's first filed and has been handled on a state law issue, Your Honor, where the state courts have ruled. Under Wilton and Brilhart, this court has said that the federal courts don't have space or room to be doing this and, in fact, would abstain and would dismiss with prejudice because there's nothing to do in this case. Because that case should be kept in the state courts. So, Your Honor, for all those reasons, I think that there is a subject matter problem going back down because the Eastern District would be in conflict and they would be requested to be in conflict with the state courts. The Rooker-Feldman problem is right on point in that this court's Parker Law Firm decision really is good guidance. But going through the four steps, I don't see any way that the federal courts should allow Evanston to create this inter-scene battle between the federal courts in Missouri versus the state courts of Missouri, particularly when this case is so long developed. With that, Your Honor, I'm happy to, if there's anything that I haven't addressed, to address. But I would see the rest of my time. Thank you. Thank you. Counsel? All right, Counsel. You have just under four minutes. Thank you, Your Honor. If you don't mind, with the Court's indulgence, I'll answer any questions, of course. With the Court's indulgence, I might work backwards from what I just heard. The Wilton and Brilhart abstention, Your Honor, respectfully, that's not dismissal with prejudice. That's either a stay or dismissal without prejudice so that you can take up a claim in another court. Wilton and Brilhart does not support dismissal with prejudice of this claim. The idea of collateral estoppel, in his order denying our Rule 59 and Rule 60 motions, Judge Ross says, hey, I didn't rule on collateral estoppel. He explicitly says that. Furthermore, collateral estoppel requires the court in the prior action to have ruled on the exact same issue. It's issue preclusion. That is not where we have the issues in this complaint. We're never raised or considered in the prior state law litigation. The idea also that there's collateral estoppel based on the removal and remand in this case. There were no substantive decisions of any kind made in that process. This case was removed, not this case, the coverage case that led to the Allianz decision. That was removed on April 28 of 2010 by Allianz, which removed the case, and the other defendants consented. On May 14, so about two weeks later, the plaintiffs moved to remand the state court. On June 14, all of the parties, the plaintiffs and the defendants, entered into a stipulation that the circuit court of the city of St. Louis would have jurisdiction, and they stipulated to the remand the next day. Judge Adleman remanded it. Respectfully, not one substantive decision was made in connection with that case. That was a case that was removed, remanded, and back in the state court. So, moving backwards up again, I will agree with my worthy opponent. That's probably the first time we've had that today. In respect to the Kesterson case, it was said, and I wrote this down, in the Kesterson case there were two different theories to obtain coverage, and that's true. Kesterson was an uninsured motorist case, and the plaintiffs sued State Farm saying, hey, I'm entitled to coverage, because, A, there was a phantom vehicle, and that's an uninsured motorist, and I'm entitled to coverage. And then, B, the driver of the car in which I was a passenger, in which I got injured, he didn't have insurance. He had some other kind of coverage, but it's not insurance within the scope of this coverage. Therefore, I'm entitled to uninsured motorist coverage on that basis. The court ruled against him on one of those bases, and so he dismissed without prejudice the other one and took that up and lost, came back and tried to refile the second one. It's only through a trick of Missouri civil rules that he was allowed to do that. What the court said was that that is a splitting of the cause of action. That is something where you had two theories for coverage in that case, and then you tried to come back for another theory of coverage. Respectfully, that is 180 degrees from this case. In the first case, the question was coverage. No doubt about it. And that question was decided, and Evanston has respected, as the state court said, Evanston has respected that decision and recognized that decision. In this case, what we're saying is that in the intervening years, Evanston has satisfied its obligations, at least to some extent. Maybe the issues I heard about, count one and count two, those sure sound like fact questions. Those sure sound like questions on the merits that, respectfully, the district court should be directed to decide. I appreciate the court's indulgence for the croaking lawyer. For all of the reasons that we've talked about in our briefs, we would ask for the judgment of the district court to be reversed and the case to be remanded. Thank you. Okay. Thank you, counsel. We appreciate it.